IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 3:11-cr-47 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **GOVERNMENT'S RESPONSE TO** |
| | ) | **DEFENDANT'S MOTION FOR NEW** |
| MARC ROBERT ENGELMANN | ) | **TRIAL** |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through the undersigned Assistant United States Attorney, opposes Defendant's Motion for New Trial, ECF No. 53, and requests that the motion be denied.

## I.   FACTS

Engelmann represented James Laures at closings for the sales of nine residential, rental-income properties. Laures was the seller and Robert Herdrich and Darryl Hanneken were the buyers. Laures and Hanneken agreed on a sales price for each property. They then agreed to list a higher price for each property on loan documents. As a result, in each transaction lenders unknowingly loaned Herdrich and Hanneken tens of thousands of dollars more than the true prices of the properties. Laures received the inflated price for each sale and then kicked back approximately $30,000 to Herdrich and Hanneken after each closing. This arrangement allowed Herdrich and Hanneken to pocket almost $300,000 of loan proceeds that the lenders believed was being paid in-full to Laures. The lenders never knew that any money was being kicked back from Laures to Herdrich and Hanneken and similarly did not know that there were dual prices for each property.

As Laures's attorney, Engelmann knew about the two prices and knew about the

kickbacks. Engelmann also knew that the actual prices and the kickbacks were not reflected on the HUD-1 forms provided to the lenders. According to the testimony of numerous Excel Title witnesses, Engelmann never disclosed the kickbacks to the closing company, Excel Title. Engelmann's assistant, Cathy Gockel, testified that Engelmann specifically instructed her not to tell anyone from Excel Title about the two prices. FBI Special Agents Huber and McMillan testified that Engelmann admitted during an interview that the lenders did not know about the two prices or the kickbacks and that he knew that the lenders didn't know.

Engelmann testified and admitted that he knew about the dual prices and the kickbacks. He also admitted that he knew the HUD-1 forms omitted the actual prices and the kickbacks for each property. And he admitted that the HUD-1 forms were provided to the lenders. Engelmann claimed, however, that he disclosed the dual prices and the kickbacks to Excel Title. Engelmann testified that he believed that Excel Title informed the lenders of all material information and that therefore, he had no intent to defraud. Engelmann was convicted on one count of conspiracy to commit bank fraud and wire fraud, two counts of bank fraud, and six counts of wire fraud.

## II.   STANDARD

Federal Rule of Criminal Procedure 33 provides: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Although the district court possesses broad discretion to grant a new trial under Rule 33, it must exercise the Rule 33 authority sparingly and with caution." *United States v. McClellon*, 578 F.3d 846, 857 (8th Cir. 2009) (internal quotations omitted). "[U]nless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand." *United States v. Aguilera*, 625 F.3d 482, 487 (8th Cir. 2010).

**III.    ARGUMENT**

    **A.    The Court gave the model instruction on good faith and the instruction is a correct statement of law. There was no error, much less a miscarriage of justice.**

The defendant argues that the Court's refusal to give the defendant's particularly worded instruction on good faith may have resulted in the jury's failure to fully consider Engelmann's good faith defense. Mot. For New Trial 2, ECF No. 53. But the Court properly instructed the jury on good faith, bank fraud, wire fraud, and intent to defraud. The Court's instructions were all correct statements of the law and apprised the jury that good faith was a complete defense to the charges. Nothing more was required.

> The Eighth Circuit Model Instruction on good faith provides the following:
>
> One of the issues in this case is whether the defendant acted in good faith. Good faith is a complete defense to the charge of (insert charge) if it is inconsistent with (insert mental state required by statute, e.g., intent to defraud or willfully) which is an element of the charge.
>
> Evidence that the defendant acted in good faith may be considered by you, together with all the other evidence, in determining whether [he] [she] acted (. . . with intent to defraud . . . .).

Eighth Circuit Manual of Model Jury Instructions, Criminal, 606 (2007). The defendant requested that the Court give the model instruction but also requested that the Court elaborate on good faith with language from *United States v. Ammons*, 464 F.2d 414, 417 (8th Cir. 1972). Mot. For New Trial, Attachment 1 at 2, ECF No. 53-1. The court declined to give the defendant's requested language from *Ammons* and gave only the model instruction.

When a specific jury instruction is challenged, the Court reviews the challenged instruction in the context of all of the instructions. *See United States v. Whitehill*, 532 F.3d 746, 752 (8th Cir. 2008) ("We determine the adequacy of instructions by looking at them as a whole

3

and in the context of the trial.") (internal citation omitted). Although defendants are generally entitled to an instruction on good faith if it is supported by the evidence, "they are not entitled to a particularly worded instruction." *See id.* Further, a challenged instruction will be upheld if it "adequately and correctly covers the substance of the requested instruction." *Id.*

In *United States v. Whitehill*, the defendants asserted a good faith defense by arguing that they lacked any intent to defraud. *See id.* The defendants submitted a direct quote from *Ammons* as their requested instruction on good faith. *See id.* ("Defendants . . . requested the jury be told: 'In order to establish fraudulent intent on the part of a person, it must be established that such person knowingly and intentionally attempted to deceive another.'"). The district court rejected the defendants' requested instruction in favor of the model instruction. *Id.* And the Eighth Circuit affirmed the defendants' conviction, holding that the model instruction "clearly defined good faith." *Id.* The Eighth Circuit considered the requested language from *Ammons* to be cumulative and unnecessary. *See Whitehill*, 532 F.3d at 752.

This Court should deny Defendant's motion for new trial consistent with the decision in *Whitehill*. The Court properly instructed the jury on good faith, and the Court's refusal to include the defendant's requested language from *Ammons* was not error. *See Whitehill*, 532 F.3d at 752. The Court instructed the jury that one element of both bank fraud and wire fraud was that the defendant acted "with the intent to defraud." Final Jury Instructions, Nos. 14 & 15, ECF No. 45. The Court explained that to act with the intent to defraud means "to act knowingly and with the intent to deceive someone . . . ." Final Instructions, No. 19. The Court informed the jury that the defendant's mistake or negligence was not enough to sustain a guilty verdict: "You may not find the defendant acted 'knowingly' if you find he was merely negligent, careless or mistaken . . . ."

Final Instructions, No. 22. The Court also instructed the jury that the defendant was presumed innocent and could only be found guilty if the government proved each essential element of the charged offenses beyond a reasonable doubt. Final Instructions, No. 6. And the Court instructed the jury that good faith was a complete defense to fraud if it was inconsistent with the intent to defraud. Final Instructions, No. 25. The defendant's requested, particularly worded instruction did not cover any additional aspect of the good faith defense that was not already provided in the Court's instructions. Though the defendant may believe that the language from *Ammons* explains good faith in a more favorable tone than the pattern instruction, he is not entitled to the description of his choice. *See Whitehill*, 532 F.3d at 752; *United States v. Prude*, 489 F.3d 873, 883 (7th Cir. 2007) ([Defendant's] instruction is more clearly worded and more directly links the relevant concepts for the jury. Nevertheless, the good faith [instruction] accurately stated the law and, taken together with the instructions as to the specific intent element of the offense and the instructions regarding the meaning of knowledge, adequately apprised the jury . . . .").

The defendant likely was not entitled to a good faith instruction at all. *See United States v. Rice*, 449 F.3d 887, 896 (8th Cir. 2006) (holding that it was not plain error for the court to fail to instruct on good faith *sua sponte* and stating "these instructions, taken as a whole, fairly encompass the concept of good faith."); *United States v. Rashid*, 383 F.3d 769, 778 (8th Cir. 2004) ("[w]e find no error, much less plain error, in the district court's refusal to give the requested good faith instruction. . . . [T]he instructions given were sufficient to cover the essence of the good faith defense.") *sentence vacated on* Booker *grounds sub nom. Abu Nahia v. United States*, 546 U.S. 803 (2005). The Court instructed the jurors that in order to find Engelmann guilty they were required to find that he acted with intent to defraud and the Court defined

"intent to defraud." Good faith is the absence of intent to defraud. No specific instruction on good faith is necessary if a proper instruction on intent to defraud is provided. *See United States v. Sanders*, 834 F.2d 717, 719 (8th Cir. 1987) ("It is sufficient that the jury was given instructions regarding the need to find specific intent to defraud in order to find the defendant guilty . . . . Thus, we find no error in refusal of Sanders' good faith instruction."). The case of *United States v. Goss*, 650 F.2d 1336, 1344–45 (5th Cir. 1981), cited by the defendant for the proposition that failure to give a requested good faith instruction constitutes reversible error despite accompanying instructions on intent has been implicitly, if not explicitly, overruled. *See United States v. Hunt*, 794 F.2d 1095, 1098 (5th Cir. 1986) (addressing this specific issue and stating: "[b]ecause the *Fowler* and *Goss* decisions lacked this examination, we questioned their continuing vitality; noting that the per se rule of *Goss* was inconsistent with the holdings of earlier cases such as *United States v. Wellendorf*, 574 F.2d 1289 (5th Cir.1978), we concluded that any conflict among our prior decisions is resolved in favor of *Wellendorf*.") (internal quotation omitted). The Court was not required to give an instruction on good faith. The Court's decision to provide the model instruction alone and omit the defendant's additional requested language is not error and did not result in a miscarriage of justice.

Finally, any conceivable error was harmless as the jury was correctly charged on the elements of the offenses, and the evidence of Engelmann's guilt was overwhelming. *See United States v. Cacioppo*, 460 F.3d 1012, 1025 (8th Cir. 2006) ("Any misinstruction may be harmless if the evidence of guilt is overwhelming."). This Court should reject the defendant's argument that its good faith instruction was erroneous or incomplete and should deny the motion for new trial.

**B.       Special Agent Huber was excepted from the Court's sequestration order pursuant to Federal Rule of Evidence 615. He was free to discuss the case with other witnesses during witness preparation. The defendant has not demonstrated that SA Huber colluded with SA McMillan or that any contact between them resulted in a miscarriage of justice.**

The defendant argues that Special Agent Huber and Special Agent McMillan violated the Court's order excluding witnesses pursuant to Federal Rule of Evidence 615. Mot. For New Trial, Attachment 1 at 4, ECF No. 53-1. Richard McNamara alleges that S.A. Huber and S.A. McMillan discussed Huber's testimony as to the procedures and techniques used in the Engelmann investigation prior to S. A. McMillan testifying. *Id.* The defendant argues that this alleged contact is a violation of the Court's sequestration order and contends that Engelmann was prejudiced when the government argued in closing that S.A. Huber and S.A. McMillan gave independent accounts of Engelmann's statements. *Id.* at 4–5. But Rule 615 does not preclude a government case agent from speaking with prospective witnesses. Further, McNamara's allegations relate only to testimony regarding investigative techniques and procedures; those facts were not in dispute and were not the subject of the accounts that the government characterized as independent in closing. Finally, even if S.A. Huber and S.A. McMillan did discuss S.A. Huber's testimony regarding the procedures and techniques used during the investigation, Engelmann has shown no prejudice.

Federal Rule of Evidence 615 provides:

At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding:

(a) a party who is a natural person;

(b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney;

>  (c) a person whose presence a party shows to be essential to presenting the party's claim or defense; or
> 
>  (d) a person authorized by statute to be present.

Fed. R. Evid. 615. Special Agent Huber was designated as the government's case agent and was exempted from the Court's sequestration order. Both a prosecutor and a case agent can meet with witnesses during trial and discuss their testimony. *See United States v. Calderin-Rodriguez*, 244 F.3d 977, 984 (8th Cir. 2001) ("[Rule 615] does not by its terms forbid an attorney from conferring with witnesses during trial."); *United States v. Kindle*, 925 F.2d 272, 276 (8th Cir. 1991) ("The record does not indicate that the trial court's sequestration order prohibited agent-witness contact and such order need not do so to meet the requirements of Rule 615."). S.A. Huber was free to meet with S.A. McMillan or other witnesses to go over their anticipated testimony.

McNamara's allegations suggest that he witnessed S.A. Huber and S.A. McMillan conversing during a recess after S.A. Huber testified. Attachment 1. S.A. McMillan was not called during the government's case-in-chief and was not present until Friday, September 9, 2011. On Friday, there were three recesses: morning, lunch, and afternoon. Clerk's Court Minutes 9/9/11, ECF No. 43. During the first two recesses, Engelmann had not yet testified. *Id.* The government did not decide to call S.A. McMillan until Engelmann took the stand and denied his statements to the FBI. Therefore, during the first two recesses S.A. Huber and S.A. McMillan had no reason to attempt to match their testimony because S.A. McMillan was a not yet a planned rebuttal witness. During the afternoon recess it was clear that S.A. McMillan would be called in rebuttal, but he and S.A. Huber did not discuss any details of S.A. Huber's testimony in preparation for S.A. McMillan's testimony. It is unclear exactly what McNamara alleges that he

overheard but S.A. Huber was free to talk to S.A. McMillan about the case and about their investigation. S.A. Huber could ask S.A. McMillan questions about the investigation and the procedures that they used during Engelmann's interview. S.A. Huber could even talk to S.A. McMillan about S.A. Huber's testimony generally and about how he thought it had affected the case. It is only specific collusion, coaching, and tailoring of testimony that Rule 615 is designed to prevent, not general discussions between the case agent and his colleagues. *See United States v. Collins*, 340 F.3d 672, 681 (8th Cir. 2003) ("The purpose of the sequestration is to prevent witnesses from tailoring their testimony to that of prior witnesses and to aid in detection of dishonesty.").

Further, Engelmann has shown no prejudice. The government denies that S.A. Huber detailed his testimony to S.A. McMillan. But even if he did talk about how he testified regarding the procedures and techniques used during the investigation, those facts were not disputed or critical to the jury's determination of guilt. The defense did not dispute that the agents collected documents from the sellers, interviewed Excel Title witnesses, executed search warrants, took notes during Engelmann's interview, showed up at his law office unannounced, or reviewed his files. And the government did not characterize the agents' testimony about these facts as independent; it was the agents' accounts of Engelmann's *statements* that were critical and that the government described as independent. The key issue in the case was whether Engelmann made inculpatory admissions to the FBI. S.A. McMillan was called specifically to rebut Engelmann's denials regarding his statements. S.A. McMillan only briefly addressed investigative techniques or procedures. The defendant has not alleged, much less demonstrated, that McMillan provided less than candid testimony or that Engelmann was prejudiced by the

9

alleged conversation between S.A. Huber and S.A. McMillan. Absent a specific showing of prejudice there is no error and no miscarriage of justice. *See United States v. Stewart*, 878 F.2d 256, 259 (8th Cir. 1989) ("Stewart further claims that an order sequestering the government's witnesses should have barred several government agents from communicating with those witnesses during the trial. . . . Stewart relies on Federal Rule of Evidence 615, which does not authorize trial courts to prevent executive branch officials from conferring with their witnesses. Stewart has shown no prejudice, and we find no error.").

McNamara, a courtroom observer sympathetic to Engelmann, made a generalized, uninformed, uncorroborated allegation based on a partially overheard conversation. The defendant has not provided any facts supporting McNamara's allegations. As the case agent, S.A. Huber was free to discuss the case with witnesses during trial and was free discuss the case with his partner. S.A. McMillan provided very little testimony on the techniques and procedures employed during the Engelmann investigation and the government did not focus on that testimony in closing. Engelmann has not demonstrated that any prejudice or injustice resulted from the alleged contact between the agents.

WHEREFORE, the government respectfully requests that the Court deny the defendant's Motion for a New Trial.

Respectfully submitted,

Nicholas A. Klinefeldt
United States Attorney

|  |  |
|---|---|
| By: | /s/ John D. Keller |
|  | John D. Keller |
|  | Assistant United States Attorney |
|  | United States Courthouse, Suite 310 |
|  | 131 East Fourth Street |
|  | Davenport, Iowa  52801 |
|  | (563) 449-5426 |
|  | (563) 449-5433 fax |
|  | John.Keller@usdoj.gov |

CERTIFICATE OF SERVICE

I hereby certify that I
electronically filed the foregoing with the Clerk
of Court using the ECF system which
will send notification of such filing to defense counsel.

UNITED STATES ATTORNEY

By:   /s/ John D. Keller
        John D. Keller

11