IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>MARC ROBERT ENGELMANN,<br><br>        Defendant. | **No. 3:11-cr-00047-JEG**<br><br><br>**O R D E R** |

This matter comes before the Court on Motion of Defendant Marc Robert Engelmann (Defendant) for New Trial, pursuant to Federal Rule of Criminal Procedure 33.  The Government resists.  Assistant United States Attorneys John D. Keller and Donald B. Allegro represented the Government.  Attorney David R. Treimer represented Defendant.  The matter is fully submitted and ready for disposition.

## I.      BACKGROUND

On May 17, 2011, the Grand Jury returned a nine-count indictment charging Defendant with one count of conspiracy to commit bank fraud or wire fraud, in violation of 18 U.S.C. § 371 (Count One); two counts of bank fraud, in violation of 18 U.S.C. §§ 1344 and 2 (Counts Two and Three); and six counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 (Counts Four through Nine).  The case against Defendant proceeded to trial.

The jury heard the following evidence through the testimony of law enforcement agents, Government witnesses, Defendant, and other defense witnesses.  Defendant is an attorney in the Quad Cities area and represented James Laures (Laures) in the mortgage closings of at least nine residential properties.  The transactions involved Laures as seller and Robert Herdrich (Herdrich) and Darryl Hanneken (Hanneken) as buyers.  The parties agreed upon the purchase price for each property, but also agreed to list on the loan documents an inflated price of between $30,000 and $35,000 more than the actual purchase price for each property. The various lenders then loaned Herdrich and Hanneken money for the transaction based on the inflated price listed on the

loan documents.  Laures received the inflated price for each sale and then returned approximately $30,000 for each property to Herdrich and Hanneken after each closing as a "kickback."

Defendant admits he knew about the two different prices and that Laures returned money to the buyers.  Defendant also knew that the inflated price was not being listed on the HUD-1 forms that were submitted to the lenders.  Government witnesses testified that Defendant never disclosed the inflated price or the kickbacks to the lenders or the closing company, Excel Title. Defendant's assistant, Cathy Gockel, testified that Defendant instructed her not to disclose the inflated price or kickbacks to Excel Title.  FBI Special Agents Jeff Huber (SA Huber) and Jim McMillan (SA McMillan) testified that Defendant admitted during an interview that the lenders did not know about the inflated price or the kickbacks.  Defendant, however, testified that Excel Title was aware of the dual prices and kickbacks because Defendant had disclosed that information to Excel Title and believed that Excel Title would have informed the lenders of this information, and, therefore, he had no intent to defraud.

At the close of the Government's case and again at the close of all evidence, Defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, which the Court denied.  On September 13, 2011, the jury convicted Defendant on Counts One through Nine.

Defendant requested a "good faith defense" jury instruction; the Court provided an instruction on good faith which included part, but not all, of Defendant's requested instruction. During deliberations, the jury requested the Court to "further define 'good faith.'"  Jury Question No. 1, ECF No. 44-2.  Defense counsel again asked that his requested instruction be provided to the jury.  The Government objected, and the Court declined to include the requested language, and instead responded to the jury that "[n]o additional instruction will be provided" and to "reread [the good faith instruction] in the context of all of the instructions."  Answer Jury

2

Question No. 1, ECF No. 44.

On September 14, 2011, Richard "Dick" McNamara (Mr. McNamara) placed a telephone call to the undersigned Judge's chambers and informed the Court that he had attended the Engelmann trial and wanted to advise the Court of what he perceived as an "injustice" that had occurred during the trial.[1] Mr. McNamara reported that, during a court recess after SA Huber had testified, Mr. McNamara observed SA Huber talking to SA McMillan, who had not been in the courtroom during SA Huber's testimony. According to Mr. McNamara, the two agents were discussing SA Huber's testimony regarding the procedure and techniques the agents had used during the case investigation. Mr. McNamara also reported that he saw SA Huber look at the notes he had referred to during his testimony. Mr. McNamara said he felt this observation was significant because SA McMillan later gave testimony consistent with SA Huber's testimony regarding the agents' procedure and techniques in their investigation and as to what Defendant had told them during the interview. Mr. McNamara further expressed that it was his recollection that the Government argued in closing that SA Huber and SA McMillan had testified independently and that they had never spoken to one another about their testimonies.

On September 26, 2011, Defendant filed this Motion for New Trial, challenging the sufficiency of the jury instruction on good faith and also arguing that SA Huber's alleged communication with SA McMillan during the trial constituted a violation of the Court's pre-trial order excluding witnesses pursuant to Federal Rule of Evidence 615.

---

[1] As more fully discussed *infra* at pp. 9-11, the record of this contact is marginally sufficient in that it is not under oath and relies upon the Court's letter summarizing the contact for the sole purpose of disclosing the communication to counsel. The details are discussed herein because the parties do so. The Court must further advise that Mr. McNamara again contacted the chambers on November 7, 2011, indicating he had not heard from anyone and wondering if anything was being done about the matter. Mr. McNamara had been advised on September 14, 2011, that any further contact, if any, would come from the lawyers, not the Court; and, he was advised of the same in this second contact. There was no further communication.

## II.      DISCUSSION

### A.      Motion for New Trial Standard

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The Court may only grant Defendant's motion if a miscarriage of justice would occur by upholding the jury's verdict. See, e.g., United States v. McClellon, 578 F.3d 846, 857 (8th Cir. 2009); United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002). "When faced with a motion for a new trial, . . . a district court is permitted to weigh the evidence and judge witness credibility for itself in determining if there may have been a miscarriage of justice such that a new trial is required." United States v. Samuels, 543 F.3d 1013, 1019 (8th Cir. 2008). "Although the district court possesses broa[d] discretion to grant a new trial under Rule 33, it must exercise the Rule 33 authority sparingly and with caution." McClellon, 578 F.3d at 857 (alteration in original) (citation and internal quotation marks omitted).

### B.      The "Good Faith" Instruction Given by the Court

Defendant argues that the good faith instruction provided by the Court was insufficient and that it is "highly likely that a more detailed explanation would have resulted in not guilty verdicts." Def.'s Br. Supp. Mot. New Trial 5, ECF No. 53-1. The Court provided the following instruction on good faith:

> One of the issues in this case is whether the defendant acted in good faith. Good faith is a complete defense to the charges of Conspiracy to Commit Bank Fraud and Wire Fraud (Count ONE), Bank Fraud (Counts TWO and THREE) and Wire Fraud (Counts FOUR through NINE) if it is inconsistent with the Defendant acting to conspire with one or more other persons to commit bank and wire fraud under element one of Count ONE, or the intent to defraud under element two of Counts TWO and THREE and element two of Counts FOUR through NINE.
> Evidence that the Defendant acted in good faith may be considered by you, together with all the other evidence, in determining whether or not he acted with intent to defraud.

Final Jury Instructions No. 25, ECF No. 45. This language directly tracks the Eighth Circuit

4

Model Criminal Instructions.  See Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit § 9.08 (2011).   Defendant requested, in addition to the above instruction, language used in a jury instruction in the case of United States v. Ammons, 464 F.2d 414, 417 (8th Cir. 1972), which provided:

> Fraudulent intent is not presumed or assumed; it is personal and not imputed.  One is chargeable with his own personal intent, not the intent of some other person.  Bad faith is an essential element of fraudulent intent.  Good faith constitutes a complete defense to one charged with an offense of which fraudulent intent is an essential element.  One who acts with honest intention is not chargeable with fraudulent intent. [. . .] Evidence which establishes only that a person made a mistake in judgement or an error in management, or was careless, does not establish fraudulent intent.  In order to establish fraudulent intent on the part of a person, it must be established that such person knowingly and intentionally attempted to deceive another.  One who knowingly and intentionally deceives another is chargeable with fraudulent intent notwithstanding the manner and form in which the deception was attempted.

Def.'s Br. Supp. Mot. New Trial 1-2, ECF. No. 53-1 (quoting United States v. Ammons, 464 F.2d 414, 417 (8th Cir. 1972)).   Reasoning that the Eighth Circuit Model Instruction adequately explained good faith and that Defendant's requested instruction was cumulative and confusing, the Court provided the jury with the model instruction.

A little over three hours after deliberations began, the jury asked the Court if it could "please further define 'good faith.'" Jury Question No. 1, ECF No. 44-2.  After conferring with counsel, the Court instructed the jury that no further instruction would be provided, and directed the jury to read the good faith instruction in the context of all instructions.

> Defendants are entitled to a theory of defense instruction if it is timely requested, is supported by the evidence, and is a correct statement of the law, but they are not entitled to a particularly worded instruction.  The district court has considerable discretion in framing the instructions and "[i]t is sufficient if the instruction actually given by the trial court adequately and correctly covers the substance of the requested instruction."

United States v. Whitehill, 532 F.3d 746, 752 (8th Cir. 2008) (alteration in original) (internal

citation omitted) (quoting United States v. Rederth, 872 F.2d 255, 258 (8th Cir. 1989)).  Jury

instructions are adequate if, "when read as a whole, [they] fairly and adequately contain[] the

law applicable to the case."  United States v. Redzic, 627 F.3d 683, 690 (8th Cir. 2010)

(alterations in original) (quoting United States v. Casas, 999 F.2d 1225, 1230 (8th Cir. 1993)).

     The discussions of the good faith defense instruction in United States v. Whitehill, 532

F.3d 746, 752 (8th Cir. 2008), and United States v. Brown, 478 F.3d 926, 927-28 (8th Cir. 2007),

are instructive.  In Whitehill, the defendants, who were charged with conspiracy to commit wire

and telemarketing fraud, requested a good faith defense instruction, which provided: "In order to

establish fraudulent intent on the part of a person, it must be established that such person

knowingly and intentionally attempted to deceive another."  Whitehill, 532 F.3d at 752.  Instead,

the district court provided the Eighth Circuit Model Instruction.  Id.  On appeal, the Eighth

Circuit held the district court did not abuse its discretion because the model instruction was

sufficient, as it "clearly defined good faith and stated it was a complete defense to the charges."

Id.

     In Brown, the defendants requested the Eighth Circuit Model Good Faith Defense

Instruction, but the district court declined to give it.  Brown, 478 F.3d at 927-28.  However, the

district court instructed the jury about the requisite mental states required in order to convict

defendants of conspiracy and wire fraud.  Id. at 928.  The Eighth Circuit affirmed the district

court, reasoning that good faith is essentially the converse of the intent to defraud, and therefore

the instructions as a whole were sufficient to apprise the jury of a good faith defense because

they adequately instructed the jury that it must find a specific intent to defraud in order to

6

convict the defendants of conspiracy and wire fraud.  Id. at 927-28.

Similar to Whitehill, here, the Court instructed the jury using the Eighth Circuit Model Good Faith Defense Instruction.  The instruction explained that good faith was a complete defense to all of the charges if it was inconsistent with Defendant acting to conspire to commit bank fraud or wire fraud in Count One, and inconsistent with the intent to defraud in Counts Two through Nine.  Not only did the Court provide instructions that made it clear that the jury must find that Defendant had the specific intent to join in the conspiracy for Count One and the intent to defraud for Counts Two through Nine, but, unlike Brown, the jury was also specifically instructed on the good faith defense.  The good faith defense instruction contained a correct and adequate statement of the law.  Even if the good faith defense instruction had not been included, the instructions as a whole would have been sufficient, as they "adequately insured that the jury appropriately considered this issue."  Brown, 478 F.3d at 928.

The instruction given to the jury in this case is essentially the same instruction given in Whitehill, which on appeal was found to adequately apprise the jury of the applicable law.  That it was not Defendant's preferred instruction is not a basis for granting a new trial, as Defendant is "not entitled to a particularly worded instruction."  Whitehill, 532 F.3d at 752 (citing United States v. Lucht, 18 F.3d 541, 553 (8th Cir. 1994)).

Furthermore, Defendant's requested instruction was cumulative.  The Court instructed the jury that Defendant was presumed innocent and that this presumption could only be overcome if the Government proved each essential element beyond a reasonable doubt.  Final Jury Instructions No. 6, ECF No. 45.  The Court then instructed the jury that "intent to defraud" means "to act knowingly and with the intent to deceive someone," Final Jury Instructions No.

19, ECF No. 45, and also instructed the jury that it "may not find the defendant acted

'knowingly' if [it] find[s] he was merely negligent, careless or mistaken."  Final Jury

Instructions No. 22, ECF No. 45.  Finally, the Court did provide the good faith defense

instruction, which, as discussed, explained that good faith was a complete defense.  Final

Instructions No. 25, ECF No. 45.  As a whole, the instructions covered every aspect of

Defendant's requested instruction, sometimes in language identical to Defendant's requested

instruction.

Finally, "[t]he response to a jury request for supplemental instructions is a matter within

the sound discretion of the district court."  United States v. Smith, 104 F.3d 145, 148 (8th Cir.

1997) (citation and internal quotation marks omitted).  The Court exercised its discretion by not

elaborating on the good faith instruction when the jury requested an explanation because the

Court concluded that it would cause more confusion than clarification.  In this circumstance,

referring the jury back to the original instructions was appropriate.  See United States v. Abdul-

Aziz, 486 F.3d 471, 476 (8th Cir. 2007) ("This court has recognized that, in responding to a

jury's request for supplemental instruction, it may be proper at times to simply refer the jury

back to the original instructions." (quoting United States v. Beckman, 222 F.3d 512, 521 (8th

Cir. 2000))).

Accordingly, no miscarriage of justice resulted from the use of the standard good faith

instruction, and Defendant's motion on this ground must be denied.

### C.      Special Agents Huber and McMillan's Alleged Improper Communication

Defendant next argues that a new trial is warranted due to the alleged communication

between SA Huber and SA McMillan during a trial recess.  Defendant asserts this

communication was in contravention of the Court's Order pursuant to Federal Rule of Evidence 615 that violated Defendant's right to a fair trial.

It should first be noted that the Court does not consider the record before it regarding what Mr. McNamara observed to be adequate.  The Court, having received a phone call from Mr. McNamara, felt it appropriate to inform the parties of this communication as quickly as possible. The letter from the Court to counsel represents a report of the Court's communication with Mr. McNamara and not a sworn statement by Mr. McNamara.  The letter in no way constitutes record evidence in consideration of a motion for new trial, even though attached to the Government's response.  Rather, it was to apprise the parties that Mr. McNamara had contacted the Court so that counsel could pursue the matter further as they saw fit.  However, Defendant's mere reference to the information contained in the Court's own letter is an inadequate basis for a new trial.  The Court has not received a sworn statement signed by Mr. McNamara attesting to the events described in his telephone conversation placed to the Court on September 14, 2011.  Mr. McNamara is not an officer of the Court, who has a sworn duty to the Court.  The Court cannot conclude that a miscarriage of justice may have occurred solely on the basis of a phone call made off the record by a trial observer who admitted being connected to Defendant.  Accordingly, the Court finds Mr. McNamara's phone call in and of itself does not provide a basis for granting a new trial.  Assuming, without deciding, that everything Mr. McNamara told the Court was true, the Court would nonetheless find no basis to grant Defendant's Motion for New Trial.

Mr. McNamara alleged that he overheard a communication between SA Huber and SA McMillan that took place in the presence of a third, unidentified man after SA Huber had

testified but before SA McMillan had testified.  SA Huber allegedly discussed his own testimony

regarding the procedures and techniques that SA Huber and SA McMillan had used in their

investigation of Defendant.  Defendant argues this is a violation of Rule 615.

Federal Rule of Evidence 615 provides:

> At the request of a party the court shall order witnesses excluded so that they
> cannot hear the testimony of other witnesses, and it may make the order of its
> own motion. This rule does not authorize exclusion of (1) a party who is a natural
> person, or (2) an officer or employee of a party which is not a natural person
> designated as its representative by its attorney, or (3) a person whose presence is
> shown by a party to be essential to the presentation of the party's cause, or (4) a
> person authorized by statute to be present.

Fed. R. Evid. 615.  SA Huber, as an investigative case agent, falls within the second exemption;

thus, SA Huber's presence in the courtroom was proper.  See United States v. Sykes, 977 F.2d

1242, 1245 (8th Cir. 1992) (citing Fed. R. Evid. 615 judiciary committee's notes).  However,

because SA McMillan was not a designated case agent, he fell within the Court's sequestration

order.  Even so, the Court's sequestration order merely excluded witnesses from the courtroom;

it did not prohibit attorneys or SA Huber from meeting with witnesses during the trial.

Therefore, SA Huber was not prohibited from meeting with Government witnesses.  See United

States v. Kindle, 925 F.2d 272, 276 (8th Cir. 1991) ("The record does not indicate that the trial

court's sequestration order prohibited agent-witness contact and such order need not do so to

meet the requirements of Rule 615.").

Even assuming a violation of the sequestration order occurred, see United States v.

Collins, 340 F.3d 672, 681 (8th Cir. 2003) ("The purpose of the sequestration is to prevent

witnesses from tailoring their testimony to that of prior witnesses and to aid in detection of

dishonesty."), Defendant has not shown prejudice.  The substance of the conversation Mr.

McNamara told the Court he overheard had to do with the procedures and techniques used

during the investigation of Defendant.  However, those details were not the critical part of SA

McMillan's testimony.  SA McMillan's testimony was very brief and was meant to rebut
Defendant's testimony denying Defendant's statements to the agents.  There is no claim that SA
Huber described his testimony regarding these statements to SA McMillan.  Further, both agents
testified based upon the FBI 302 interview form that had been drafted immediately after the
interview on May 6, 2011, and which had been produced to the defense for possible cross-
examination on any inconsistencies.  The record provides no basis upon which to conclude the
substance of SA McMillan's testimony was impacted by any discussion with SA Huber during
the trial.

Contrary to Defendant's depiction, in closing argument the Government argued that SA
Huber and SA McMillan testified as to their independent recollections about what Defendant
told them during the interview *regarding the lenders' knowledge of the kickbacks* and that
neither had the benefit of hearing the other's testimony before testifying.  Defendant does not
challenge the accuracy of this recap of the closing argument.  Thus, at best, Mr. McNamara's
observations provide Defendant with uncorroborated impeachment evidence on a collateral issue
by a witness sympathetic to Defendant.  The Court concludes that the inclusion of SA
McMillan's testimony had no undue prejudicial effect on Defendant's case, and consequently
Defendant has not demonstrated a basis for granting a new trial.  See Collins, 340 F.3d at 681
("[A]lthough the officer's presence violated the sequestration order, no prejudice occurred. . . .
As such, the district court did not err in denying [the defendant's] mistrial or new trial
motions."); Kindle, 925 F.2d at 276 ("We cannot conclude from the record before us that
appellant suffered any prejudice from the witness contacts . . . .").[2]

----

[2] Defendant makes an offhanded reference to the Government making a "misstatement on
the record," Def.'s Br. Supp. Mot. New Trial 5, ECF. No. 53-1, and "argu[ing] the government's
position based on testimony that was tainted," Def.'s Mot. New Trial 3, ECF No. 53, implying
prosecutorial misconduct.  A new trial will be granted on this basis "if the conduct, even if
improper, so prejudiced [the defendant] that he was unable to obtain a fair trial."  United States

Because the Court concludes that the record before it is not adequate to determine whether a violation of the sequestration order occurred, the Motion for New Trial is denied. Even assuming the record is adequate and a violation of the sequestration occurred, the motion would be denied because there could be no showing of prejudice.

III.    CONCLUSION

For the reasons stated, Defendant's Motion for New Trial, ECF No. 53, must be **denied.**

**IT IS SO ORDERED.**

Dated this 7th day of November, 2011.

JAMES E. GRITZNER, JUDGE
UNITED STATES DISTRICT COURT

---

v. Barrera. 628 F.3d 1004, 1007 (8th Cir. 2011) (alteration in original) (quoting Carlson v. Minnesota, 945 F.2d 1026, 1029 (8th Cir. 1991)). This argument fails because, as explained above, the record is not adequate to determine that prosecutorial misconduct occurred and because no prejudice can be shown.