IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br><br>vs.<br><br>MARC  R. ENGELMANN,<br><br>                      Defendant. | CRIMINAL NO.  3:11-cr-47<br><br><br>SENTENCING MEMORANDUM |

## TABLE OF CONTENTS

ARGUMENT - I - Sophisticated Means -. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT - II- Position of Trust -. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT - III - Minimal Role -. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT - IV - Obstruction of Justice -.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT - V  - Restitution -. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## AUTHORITIES

### CASES

Gall v. United States, 552 U.S. 38; 128 S.  Ct.  586 (2007)

United States v.  Abdul-Aziz, 486 F.  3d 471, 478-79 (8th Cir 2007)

United States v.  Ammons, 464 F.  2d 414, 417 (8th Cir 1972)

United States v.  Baker, 200 F.  3d 558, 564 (8thCir.  2000)

United States v.  Brelsford, 982 F.  2d 269, 271 (8th Cir 1992)

United States v. Brown,  311 F.  3d 886, 890 (8th Cir.  2002)

United States. v.  Carpenter, 487 F 3d 623, 626 (8th Cir 2007)

United States v.  Cubillos, 474 F.  3d 1114, 1120 (8th Cir 2007)

United States v.  Denton, 434 F 3d 1104, 1115 (8th Cir.  2006)

United States v.  Esparza,  291 F.  3d 1052, 1055 (8th Cir.  2002)

United States v.  Finck,  407 F.  3d 908, 914 (8th Cir 2005)

United States v.  Hance,  501 F.  3d 900, 909 (8th Cir 2007)

United States v.  Jenkins, 578 F.  3d 745, 753 (8th Cir.  2009)

United States v.  Johnson, 358 F 3d 1016, 1018 (8th Cir 2004)

United States v.  Lopez, 414 F.  3d 954, 961 (8th Cir 2005)

United States v.  Lopez-Vargas, 457 F.  3d 828, 831 (8th Cir.  2006)

United States  v.  Miller, 588 F.  3d 560, 564 (8th Cir 2009)

United States. v.  Miell, 661 F 3d 995, 997 (8th Cir 2011)

United States v.  Olson, 22 F 3d 783 786 (8th Cir.  1994)

United States v.  Parish, 565 F.  3d 528, 534 (8th Cir.  2009)

United States  v.  Septon,  557 F 3d 934, 937 (8th Cir.  2009

**ARGUMENT I**

**ENGELMANN SHOULD NOT RECEIVE A 2 LEVEL
ENHANCEMENT FOR SOPHISTICATED MEANS**

The guidelines provide for a two-level enhancement where "the offense otherwise involved sophisticated means." U.S.S.G. § 2B1.1(b)(9)(C).  Sophisticated means under § 2B1.1(b)(9)(C) are "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2B1.1 cmt., 8(B).  The sophisticated-means enhancement is proper when the offense conduct, viewed as a whole, "was notably more intricate than that of the garden-variety [offense]." *United States v. Hance,* 501 F. 3d 900, 909 (8th Cir 2007).  "Repetitive and coordinated conduct, though no one step is particularly complicated, can be a sophisticated scheme." *Finck, 407 F. 3d at 915*  See *U.S. v. Jenkins*, 548 F 3d 745 (8th Cir 2009)

Application note 7(B) (now 8(B)) gives some guidance:  " '[S]ophisticated means' means especially complex or especially  intricate offense conduct pertaining to the execution or concealment of an offense.  For example, in a telemarketing  scheme, locating the main office of the scheme in one jurisdiction,  but soliciting operations in another jurisdiction, ordinarily indicates sophisticated means.  Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means."  See *U.S. v. Finck,* 407 F 3d 908, 914 (8th Cir. 2005)

The trial testimony establishes that Engelmann did not participate in the drafting of the side agreement or the signing between the seller and the purchasers.  Further trial testimony established that Engelmann had no knowledge that the appraisals on the property that his client,

3

James Laures, was selling were inflated. He had no contact with the appraiser and had no legal reason to make such contact. The trial testimony further established that it was the mortgage broker who dealt with the purchasers, Robert Herdrich and Darryl Hanneken, to procure mortgages on the subject properties. Documents at trial showed that both the seller and purchasers used their correct names, addresses, social security numbers, and in the case of the purchasers, their correct bank account numbers.

Trial testimony also established that Engelmann did not participate in any of the transactions or production of documents until the day of closing. The entire kick-back scheme did not require Engelmann to participate unless requested by unindicted co-conspirator, James Laures. At trial, Pamela Schuldt testified that had James Laures not secured the services of an attorney, that her title closing company would have prepared the necessary documents for closing and charged Laures a fee for that document preparation.

It can be easily said that the mortgage fraud perpetrated upon the lenders in this case was of the simplest kind and clearly not sophisticated. No fictitious entities or corporate shells were utilized by Robert Herdrich or Darryl Hanneken or by Engelmann.

Engelmann did not have the benefit of knowledge that the appraisals were inflated and that the buyers did not have the wherewithal to honor the terms of the promissary note and mortgage. It was not reasonably foreseeable for Engelmann to know that the buyers would default on the purchases. Engelmann's participation was minimal, at best, preparing closing statements for Excell Title with the inflated sales price and preparing a closing statement for his client with the actual sales price. This simply cannot constitute a sophisticated means enhancement.

4

**ARGUMENT II**

**ENGELMANN SHOULD NOT RECEIVE A TWO LEVEL ENHANCEMENT
FOR ABUSE OF A POSITION OF TRUST.**

Under U.S.S.G. § 3B1.3, the Government must prove two elements by a preponderance

of the evidence in order for the abuse of trust enhancement to apply: (1) defendant occupied a

position of private or public  trust, and (2) defendant used this position in a manner that

significantly facilitated the commission or concealment of the offense U.S.S.G. § 3B1.3; see also

*United States v.  Olson*, 22 F 3d 783 786 (8th Cir.  1994) (quoting *United States v.  Brelsford*,

982 F.  2d 269, 271 (8th Cir 1992)).  The application of U.S.S.G. § 3B1.3 "is fact intensive

because it turns on the precise relationship between the defendant and [her] victims and therefore

cannot be decided on the basis of generalities." *United States v.  Jenkins*, 578 F.  3d 745, 753

(8th Cir.  2009) (quoting *United States v.  Baker*, 200 F.  3d 558, 564 (8thCir.  2000)).  *U.S. v.*

*Miell,* 661 F 3d 995, 997 (8th Cir 2011).

While we agree an arms-length commercial relationship will ordinarily not suffice for the

enhancement to apply, in *United States v.  Baker*, 200 F.  3d 558, 564 (8thCir.  2000), we

explained that the issue of whether an abuse-of-trust enhancement applies "is fact intensive

because it turns on the precise relationship between the defendant and [his] victims and therefore

cannot be decided on the basis of generalities such as lawyers and doctors occupy positions of

trust but bank tellers and insurance agents do not." See:  *U.S. v.  Septon*,  557 F 3d 934, 937 (8th

Cir.  2009).

Engelmann held no special position of trust with the mortgage lenders in this case.  In

fact, when Engelmann first went to the closings, he was unaware of who the lender may be.  In

5

the normal course of business,  a seller's attorney would never contact a lender even if the seller's attorney knew who the lender was.  Obviously,  there is no privity of contract between Engelmann and the lenders in this case.  There was no commercial relationship established by the Government between Engelmann and the lenders.  Given the fact that Engelmann did not have any knowledge of the inflated appraisals or knowledge of the borrower's ability to repay the principal loans on these properties, there is no reasonable expectation that there was a trust between Engelmann and the lenders.

This conspiracy was comprised of several players.  The evidence shows only four people knew the lenders were not informed of the inflated appraisals and the buyers' true financial condition.  Those four were unindicted co-conspirator Chuck Mirocha and co-conspirators Winnie Elvidge, Robert Herdrich and Darryl Hannekan.  Mirocha  was the appraiser.  Elvidge was the mortgage broker.  Herdrich  and Hanneken were the buyers.  The side agreement that was negotiated between James Laures and Herdrich and Hanneken was not prepared by Engelmann,  nor was he present at the signing.  Engelmann's involvement in this conspiracy was at best minimal,  and did not employ any special skills.  As previously stated, Pamela Schuldt testified that Excel Title would have prepared the document for James Laures and charged him for that preparation.  The   trial testimony indicated that Engelmann's secretary did the bulk of the work in preparing the closing numbers for Excel Title.

In this case,  Engelmann knew about the side agreements before the real estate closings, but he had  no knowledge of what transpired behind the scenes.  His only gain in all 9 transactions was less than $5000.00, his standard fees for abstracting and closing the real estate transactions.  When comparing Engelmann's involvement with the other parties involved in the

perpetrated fraud, it becomes quite clear that Engelmann's role was minimal at best.  He did not

abuse a position of trust because he did not occupy such a position.


## ARGUMENT III

## ENGELMANN SHOULD RECEIVE AN OFFENSE
## LEVEL REDUCTION FOR MINIMAL ROLE.

"The defendant bears the burden of establishing entitlement to the reduction." *United States v.*

*Cubillos,* 474 F. 3d 1114, 1120 (8th Cir 2007).  "A defendant may be eligible for the minor-role

adjustment if his culpability is relatively minor compared to other participants, but the mere fact

of lesser culpability does not entitle him to the reduction."     *United States v. Lopez,* 414 F. 3d

954, 961 (8th Cir 2005);  *United States v. Johnson*, 358 F 3d 1016, 1018 (8th Cir 2004).  "In

cases in which the defendant is one of several participants in a conspiracy, he must show that his

culpability was relatively minor compared to that of the other participants and that he was not

deeply involved in the offense." *United States v. Lopez-Vargas,* 457 F. 3d 828, 831 (8th Cir.

2006); See *United States v. Denton*, 434 F 3d 1104, 1115 (8thCir. 2006).  ("A less culpable

defendant is not entitled to reduction if he was 'deeply involved' in the offense").

     "The test for whether a reduction is appropriate is to compare the acts of the defendant 'in

relation to the relevant conduct for which the participant is held accountable' and measure 'each

participant's individual acts and relative culpability against the elements of the offense.' "

*Gomez Godinez*, 474 F 3d at 1042-43 quoting Johnson, 408 F 3d at 538-39.  *U.S. v. Carpenter*,

487 F 3d 623, 626 (8th Cir 2007).   In application note § 3B1.2 (n. 3A) (Guidelines 2010)

provides,

" *Likewise, a defendant who is accountable under §1B1.3 for a loss amount under §2B1.1 9*

*Theft, Property Destruction, and Fraud"  that greatly exceeds the defendant's personal gain from*

*a fraud offense and who had limited knowledge of the scope of the scheme is not precluded from*

*consideration for an adjustment under this guideline.  For example a defendant in a healthcare*

*fraud scheme, whose role in the scheme was limited to serving as a nominee owner and who*

*received little personal gain relative to the loss amount, is not precluded from consideration for*

*an adjustment under this guideline."*

When Engelmann's actions are compared to the rest of the players in the conspiracy, it is

clear that he had a very limited role, much more limited than anyone else including the

unindicted seller, Herdrich and Hanneken, Chuck Mirocha, and Winnie Elvidge.  When

Engelmann was approached by James Laures, all of the necessary acts, other than the actual

closing, had been executed  by the other co-conspirators.  Engelmann prepared no documents nor

handled any of the  transaction proceeds.  His only benefit from representing James Laures was

the amount of his abstracting and closing fees.

## ARGUMENT IV

## ENGELMANN SHOULD NOT RECEIVE A 2 LEVEL ADJUSTMENT
## FOR OBSTRUCTION OF JUSTICE

The bare fact of conviction following the defendant's testimony is not  sufficient to

support an obstruction of justice enhancement.  "A district  court cannot, however,  impose the

departure 'simply because a defendant testifies on his own behalf and the jury disbelieves him.'  "

*United States v. Abdul-Aziz*, 486 F. 3d 471, 478-79 (8th Cir 2007).  The sentencing judge is encouraged to make  specific findings on a defendant's perjury. A district court's failure to expressly state his findings on  willfulness in giving false testimony is not  grounds for reversal, however,  if the evidence of willfulness is unequivocal and the defendant's contradictory testimony is not a result of confusion, mistake or faulty memory.  *United States v. Brown,*  311 F. 3d 886, 890 (8th Cir.  2002)*;  United States v.  Esparza,* 291 F.  3d 1052, 1055 (8th Cir.  2002)

This case presents  one of the unusual circumstances where a defendant can be convicted at trial,  and yet the obstruction of justice for perjury after testimony should not apply. Engelmann has asserted a good faith defense all throughout the course of the trial.  Engelmann had submitted a special good faith instruction prior to trial and at the end of his case-in-chief.

This Court refused to give the 8th Circuit approved Ammons  instruction  from *U.S. v. Ammons*, 464 F.  2d 414, 417  (8th Cir.  1972 )  and relied upon a much more abbreviated good faith instruction.  After only a few hours of deliberation, the jury requested additional instruction on good faith.  At that time, this Court again refused to give the requested instruction from the defense.  Several hours later the jury reached their verdict of guilty.

Good faith was essential to the Engelmann defense.  Knowing that the jury was seeking additional instruction on good faith and the Court not allowing that instruction, this Court cannot now speculate that if it  had given the instruction the verdict would be the same.  Only if the jury had been instructed as requested by the defense and the jury then acquitted, would we know the answer to that question.

Engelmann testified that he thought the lenders were aware of the kick-back agreements. He testified that he informed his client, Laures, that "As long as the lenders knew,  it would be

9

O.K."   He also testified that he had informed Darryl Hanneken at a chance meeting in his office

that he should make sure the lenders knew of the side agreements.

Agent Huber testified that Engelmann said the  lenders did not know of the kick-backs

and that would be fraud.  Englemann maintained he said that  **"if"** the lenders did not know of

the kick-backs, that  would be fraud.  Unfortunately, this conversation was not recorded.

It is apparent Engelmann was mistaken as to the knowledge of the lenders concerning the

side agreement.  This case is simply too close to call to apply the obstruction of justice

enhancement.

## ARGUMENT V

## ENGELMANN'S RESTITUTION  SHOULD NOT EXCEED THE AMOUNT OF THE FEES HE RECEIVED FROM THE 9  LAURES TRANSACTIONS

Under the Sentencing Guidelines, the offense level for fraud offenses increases based on

the amount of the loss.  See USSG §2B1.1(b).  "As a general rule,  the amount of loss is the

greater of actual loss or intended loss."  *United States v.  Parish*, 565 F.  3d 528, 534 (8th Cir.

2009); see U.S.S.G. § 2B1.1, comment.  (n.2(A)).  "Actual loss" is "the reasonably  foreseeable

pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1, comment.  (n.2(A) (I)).

Intended loss is defined as "the pecuniary harm that was intended to result from the offense." *id*

§ 2B1.1, comment.  (N.2(A)(ii)).  "The court shall use the gain that resulted from the offense as

an alternative measure of loss only if there is a loss but it reasonably cannot be determined." *id* §

2B.1, comment.  (n.2(B)); See *Parish*, 565 F.  3d at 534  See U.S. v.  Miller, 588 F.  3d 560, 564

(8th Cir 2009).

The trial testimony of James Laures as well as Engelmann do not support that either of them intended the mortgage lenders to sustain a loss on the executed mortgages. Clearly, because both Laures and Engelmann did not know of the inflated appraisals and the inability of Herdrich and Hanneken to make the mortgage payments, there can be no reasonably foreseeable or intended loss. Engelmann does not argue that the lenders did not sustain a loss. However, that loss is undeterminable and the Court should look to the net gain that Engelmann received from participation in the loan transaction. Schedule A, attached to the presentence report on 6224 Appomatox Ave., indicates that when the property was sold the current loan balance was $107,839.91 and that the property sold for $50,000.00. Probation has calculated a loss at $57,839.91. This loss is not an accurate figure unless the Government can establish that the foreclosure sales price of $50,000.00 was an arms-length transaction and not merely a dumping of the property on the market in a non commercial sale. Eight out of the nine properties were sold to Gear Head Properties LLC. The one property located at 710 W. 61st Street did not go through foreclosure and sold for $61, 000.00. This property was sold privately and sustained the least amount of loss of all 9 properties.

The restitution amount for 6224 Appomatox Ave. to Lehman Reo-Als in the amount of $89,742.47 makes absolutely no sense. Subtracting the loss from the sale from the restitution amount is $31,902.56 of unexplained restitution. The same is true with the property located at 6232 Appomatox Ave, wherein J.P. Morgan Chase is claiming restitution in the amount of $66,155.62. The Government's Discovery file does not have any supporting documents to establish that restitution in the amount of $8,875.29 is reasonable.

Bank of America is claiming losses on 6 of the 9 properties yet the Discovery does not

11

support how Bank of America became involved with the New Century mortgages and what type of loss they sustained.  The loss determination and restitution amounts are undeterminable to any degree of accuracy.  The fact that 8 out of 9 of the loan properties were sold to the same buyer for less than the assessed value at the time of the sale indicates that it was not a arms-length transaction and the numbers are not reliable.

18 U.S.C. Section 3663 (B)(ii) "To the extent that the Court determines that the complication and prolongation of the sentencing process resulting  from the fashioning of an order of restitution under this subsection outweighs the need to provide restitution to the victim, the Court may decline to make such an order." This is precisely the Engelmann case.  Who are the victims?  Is it Lehman Brothers, who is now bankrupt,  or is it New Century Mortgage,  who is now bankrupt,  or is it Bank of America who has no record chain of title in any of these mortgages,  or is it J.P. Chase Morgan,  or is it the stockholders of these large corporations that are the true victims?  This Court cannot determine by a preponderance of the evidence what reasonable amount of loss should be assessed to Engelmann and this Court cannot determine a reasonable amount of restitution that should be assessed to Engelmann.  As noted above, the best measure of determining restitution would be the gain Engelmann received from participation in these transactions.  That amount is $,4555.00.


**CONCLUSION**

This Court after consideration of the sentencing factors set forth in 18 U.S.C. Section 3553 (A) should impose a sentence of Probation.  When evaluating the nature and circumstances of Engelmann's offenses and the history and characteristics of the Defendant, a sentence of

incarceration is not required.   Engelmann's conviction clearly sends to the community a message

that even his minimal role in the fraud scheme perpetrated by  Herdrich and Hanneken results in

the loss of his livelihood,  including his entire practice of law.  His licenses to practice law in

Illinois and Iowa are being revoked,  and it is highly unlikely that he will ever be able to reinstate

his licenses at any point in time in the future.  As noted in the presentence report, Engelmann has

no criminal history and that the course of his conspiratorial conduct amounts to participation in 9

real estate transactions representing one seller for a period of 6 weeks.  There have been no

allegations that prior to the 6 week period or after, that Engelmann participated in any kind of

scheme to defraud lenders.  In fact, his client base was representing lenders in mortgage

transactions.  The punishment for his actions has already been imposed through the loss of his

law practice, loss of income and humiliation within the legal community.  Incarceration would

serve no practical purpose.

  This case clearly  is one where there is no rehabilitation requirement due to Engelmann's

inability to participate in any real estate or mortgage transactions in the future.  His 36- year law

practice is now history.  The Supreme Court approved Judge Pratt's reasoning in concluding a

sentence of probation can achieve the statutory goal of promoting respect for the law in *Gall v.*

*U.S.* 552 U.S. 38; 128 S.  Ct.  586 (2007):

> The Government's legitimate concern that a lenient sentence for a
> serious offense threatens to promote disrespect for the law is at
> least to some extent off-set by the fact that seven of the eight
> defendants in this case have been sentenced to significant prison
> terms.  Moreover, the unique facts of Gall's situation provide
> support for the District Judge's conclusion that, in Gall's case, "a
> sentence of imprisonment may work to promote not respect, but
> derision, of the law if the law is viewed as merely a means to
> dispense harsh punishment without taking into account the real

13

conduct and circumstances involved in sentencing."  552 U.S. at 54, 128 S.  Ct.  at 599

Like the defendant in *Gall*, Marc Engelmann is the defendant in this group for whom imprisonment is not necessary.  A sentence of probation will be sufficient.

Respectfully Submitted

_____/s/ David R.  Treimer____

David R.  Treimer
Attorney for Defendant
601 Brady Street Suite 311
Davenport, Iowa  52803
563-323-7889
563-323-9309  Fax
ttswlaw@bigplanet.com

**CERTIFICATE OF SERVICE**

I hereby declare that on January 17, 2012  I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the following:

Mr. Donald Allegro
Mr. John Keller
Assistant United States Attorney
 131 East 4th Street, Ste. 310
 Davenport, IA 52801
*Attorney for USA*

14