IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No.  3:11-cr-47 |
| | ) | |
| v. | ) | **GOVERNMENT'S** |
| | ) | **SENTENCING MEMORANDUM** |
| MARC ROBERT ENGELMANN, | ) | |
| | ) | |
| Defendant. | ) | |

Engelmann's final offense level should reflect a two level increase for sophisticated means pursuant to U.S.S.G. § 2B1.1(b)(10)(C) and an additional two level increase for abuse of a position of trust pursuant to U.S.S.G. § 3B1.3. Engelmann's offense level should also be increased by two levels based on his obstruction of justice under U.S.S.G. § 3C1.1 and should not be reduced based on a mitigating role adjustment. Finally, the Court should sentence Engelmann in accordance with the loss estimate provided in the PSR.

    **I.    Engelmann's Offense Involved Sophisticated Means.**

Engelmann contends that his limited role in this offense was uncomplicated; therefore, the increase for sophisticated means should not apply. Objections to the PSR 1, ECF No. 58; Def. Sent. Mem. 3–4, ECF No. 67. But Engelmann joined and assisted an extensive, coordinated conspiracy that required the knowing participation of an appraiser, a mortgage broker, a real estate agent (in instances where an agent was used), and a real estate attorney. Numerous fraudulent documents chalked full of real estate jargon and legalese were used to perpetrate and conceal the fraud on a repeated basis for over a year. The sophisticated means enhancement should be applied.

1

Section 2B1.1(b)(10)(C) of the United States Sentencing Guidelines provides for a two-level increase in offense level if "the offense otherwise involved sophisticated means." USSG §2B1.1(b)(10)(C). Application Note eight elaborates on what constitutes sophisticated means: "For purposes of subsection (b)(10)(C), 'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." USSG §2B1.1, cmt. n.8. The Eighth Circuit has further detailed the type of conduct that may warrant application of the sophisticated means enhancement. In both *United States v. Edelmann*, and *United States v. Halloran*, the court held that schemes involving multiple transactions, numerous fraudulent documents, and the exploitation of multiple victims warranted application of the sophisticated means enhancement. *See United States v. Edelmann*, 458 F.3d 791, 816 (8th Cir. 2006) ("Collectively, these false documents demonstrate that Edelmann used sophisticated means."); *United States v. Halloran*, 415 F.3d 940, 945 (8th Cir. 2005) ("Halloran's scheme did not involve a single fraudulent act, but a complex series of fraudulent transactions . . . . We therefore hold that the district court did not commit clear error by recognizing an enhancement for the use of sophisticated means where the scheme involved a complex series of false property transfers. . . .") (internal quotations omitted).

The overall scheme in this case involved over thirty sales of rental income properties spanning approximately one year. Multiple attorneys facilitated the different transactions and multiple lenders were victimized. Each transaction required the use of: (1) a fraudulent purchase contract in which the price of the property was misrepresented; (2) an undisclosed addendum or second contract providing for the actual price of the property and a kickback to be paid from the seller to the buyer after closing; (3) a fraudulent HUD-1 settlement statement that included

falsified prices, seller contributions, and buyer contributions; and (4) fraudulent loan applications. *See, e.g.,* Government Trial Exhibits 2B-1 (purchase contract), 2B-2 (addendum), 2A-1 (HUD-1), 2D-3 (lender's file). The fraud was perpetrated by a mortgage broker, an appraiser, a real estate agent, buyers, sellers, and attorneys. The sophisticated means enhancement has been applied to every defendant who has been sentenced in this case.

Engelmann was personally involved with nine real estate transactions spanning several months in which two different mortgage lenders were defrauded. Indictment, ECF No. 2; PSR ¶¶ 1, 8–11, ECF No. 65. Engelmann represented James Laures, a seller in these transactions. Engelmann reviewed the dual contracts and knew that there were two different sale prices and kickbacks associated with the sale of each property. PSR ¶ 9, ECF No. 65. He nonetheless attended closings, counseled his client to sign the fraudulent HUD-1's, and distributed two versions of transaction summaries for each property. Engelmann directed his secretary, Cathy Gockel, to prepare one version for Laures which reflected the kickback for each property and another version for Excel Title which did not reflect the kickbacks. *See, e.g.,* Government Trial Exhibit 2B-3 (Summary with no kickback) and 2B-4 (Summary reflecting kickback and notation "Can't be on HUD."). Engelmann knew that the lenders were unaware of the concealed kickbacks and the divergent prices.

Engelmann's argument against a finding that sophisticated means were employed in this scheme is that his role was extremely limited: he didn't draft the bogus purchase contracts; he didn't draft the addenda; he didn't come up with the idea for the kickbacks; he didn't make any direct false representations to the lenders. Def. Sent. Mem. 3-4, ECF No. 67. But application of the sophisticated means enhancement depends on the sophistication of the overall scheme, not

Engelmann's individual conduct. *See United States v. Jenkins-Watts*, 574 F.3d 950, 965 (8th Cir. 2009) ("[Defendant] is responsible under principles of relevant conduct for acts of others that were taken in furtherance of a jointly undertaken activity, if they were reasonably foreseeable . . . . [Defendant] was aware of how the conspiracy worked . . . . Accordingly, the sophisticated means enhancement applies.") (internal quotation omitted); *United States v. Green*, 648 F.3d 569, 576 (7th Cir. 2011) ("a sophisticated means enhancement could be applied to [defendant] so long as the use of sophisticated means by other criminal associates was reasonably foreseeable to him."); *United States v. Crosgrove*, 637 F.3d 646, 666 (6th Cir. 2011) (same).

Engelmann knew that there were dual contracts containing different prices; he knew that the buyers and seller were exchanging undisclosed kickbacks; he knew that the HUD-1's contained material misrepresentations; and he knew that none of this was disclosed to the lenders. The sophisticated means enhancement is appropriate because this scheme required expertise and coordinated participation by multiple professionals; it went well beyond garden-variety fraud. Engelmann knew how the scheme worked and participated in perpetrating and concealing the fraud. Even if the Court finds that Engelmann did not personally employ sophisticated means, the use of such means by co-conspirators was reasonably foreseeable and the enhancement should be applied.

**II.     As a Real Estate Attorney Engelmann Abused a Position of Trust.**

Engelmann argues that the abuse of trust enhancement should not be applied to him because he was not in a trust relationship with the lender victims. Objections to the PSR 1, ECF No. 58; Def. Sent. Mem. 5–6, ECF No. 67. The application of the enhancement, however, does not depend on Engelmann's relationship with the lenders. As an attorney Engelmann occupied a

position of public trust and he betrayed that trust by facilitating this fraud.

Section 3B1.3 of the United States Sentencing Guidelines provides for a two-level increase in offense level "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. The commentary to the Guideline defines public or private trust as "a position . . . characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to less supervision that employees whose responsibilities are primarily non-discretionary in nature." U.S.S.G. § 3B1.3 cmt., Application Note 1.

Attorneys occupy positions of public trust. *United States v. Kieffer*, 621 F.3d 825, 836 (8th Cir. 2010) ("A licensed attorney generally holds a position of public trust.); *United States v. Goldman*, 447 F.3d 1094, 1096 (8th Cir. 2006) ("A defendant acting in his capacity as an attorney occupies a position of public trust."). And an attorney's use of their specialized knowledge to commit a crime justifies application of the abuse of trust enhancement. *Id.* ("Use of knowledge gained as an attorney to commit a crime subjects a defendant to an enhancement for abuse of a position of trust under U.S.S.G. § 3B1.3.").

As a licensed real estate attorney Engelmann occupied a position of public trust. At the time of the offense he was licensed to practice law in both Iowa and Illinois; he operated an independent law firm; he was the only partner practicing at his firm; and he held himself out to the public as an expert in real estate law. *See* http://www.engelmannlaw.com/ (Last modified April 23, 2005).  Engelmann had no supervision. He exercised complete discretion in his cases. Here, Engelmann used his position as a real estate attorney to reassure Laures that the

transactions and financing proposed by Hanneken were legal. Laures had no expertise and relied entirely on Engelmann to alert him to any problems with the sales. Laures testified that he sought Engelmann's counsel as a real estate attorney because he had used him before and believed him to be a good attorney. Engelmann had an opportunity and a duty as a lawyer to convey to his client that these transactions constituted mortgage fraud. He failed to do so and instead used his position as a licensed attorney to enable the criminal activity. He facilitated the fraud by attending the closings and counseling Laures to sign fraudulent HUD-1 Settlement Statements. And Engelmann concealed the fraud by sending transaction summaries to the closing agent that did not reflect the kickbacks associated with each sale. The two level increase in offense level for Engelmann's abuse of a position of trust is warranted.

### III.     Engelmann did not Play a Minimal Role in this Conspiracy.

Engelmann argues that as the seller's attorney his role was so limited that his offense level should be reduced to reflect his mitigating role. Def. Sent. Memo. 7–8, ECF No. 67. But Engelmann was central to the transactions in which he was involved; the deals would not have been done without him. He counseled his client to proceed with the fraudulent deals; he attended the closings as the sole attorney involved with the transactions; and he actively concealed the fraud from the title company and lenders. He was more than a minor participant and the reduction should not apply.

United States Guideline Section 3B1.2 provides for a four level decrease in offense level if the defendant was a minimal participant in any criminal activity and a two level decrease if the defendant was a minor participant. U.S.S.G. § 3B1.2. The Guidelines provide that the minimal participant reduction is intended for defendants who lack "knowledge or understanding of the

scope and structure of the enterprise and of the activities of others." U.S.S.G. § 3B1.2, cmt. n.4. The minor participant reduction is intended to apply to a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* n. 5. And while the defendant's relative culpability is the focus of the analysis, "[t]he mere fact that other conspirators were more involved does not entitle a defendant who was an essential component of the conspiracy to the [mitigating role] reduction." *United States v. Doe*, 613 F.3d 681, 687 (7th Cir. 2010).

As noted above, Engelmann was essential to the transactions for which he was charged. He was the professional that Laures relied upon and Engelmann enabled the buyers and seller to execute these transactions. He reviewed the contracts and he was fully aware of the kickbacks and dual prices. Engelmann was at every closing; he was the only attorney in the room; he facilitated the execution of fraudulent HUD-1's; and he concealed the kickbacks.

It is true that Engelmann is being held accountable "for a loss amount . . . that greatly exceeds [his] personal gain." U.S.S.G. § 3B1.2, cmt. n.3(A). But Engelmann did not have "limited knowledge of the scope of the scheme." *Id.* He knew the full extent of the kickbacks and he knew that there was a dramatic difference between the actual price being paid for each property and the price reflected on the HUD-1. Neither a mitigating nor an aggravating role adjustment is appropriate. If the Court does find that Engelmann is eligible for a mitigating role adjustment, he should only receive a two level decrease for his status as a minor participant.

**IV.    Engelmann Obstructed Justice when he Testified in his own Defense.**

Engelmann essentially contends that he did not lie when he testified. Def. Sent. Mem. 8–10, ECF No. 67. But Engelmann testified that Excel Title knew about the different prices and

the kickbacks and that Excel Title (as opposed to Engelmann) insisted that the numbers not be included on the HUD. Partial Trial Transcript, Engelmann Testimony, 32, 35, 36, 42, 46, 56, 57. Engelmann also testified that he believed that the lenders knew about the kickbacks and the two prices. Partial Trial Transcript, Engelmann Testimony, 32, 34. Excel Title witnesses testified that they did not know about the kickbacks or the different prices. And Engelmann's secretary testified that Engelmann instructed her not to disclose the kickbacks or actual prices to Excel Title. Further, all of the documents sent from Engelmann's office to Excel Title omitted the kickbacks and all but one of the documents omitted the actual sales price. Engelmann lied as to material matters; the obstruction enhancement should be applied.

>United States Guideline Section 3C1.1 provides:
>
> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. The commentary to the Guideline provides that "[I]n applying this provision in respect to alleged false testimony . . . the court should be cognizant that inaccurate testimony . . . may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." U.S.S.G. § 3C1.1, cmt. n.2.

Engelmann obstructed justice. His testimony was directly contradicted by the other evidence in the case and by the jury's finding of guilt. *See, e.g.*, *United States v. Ewing*, 632 F.3d 412, 416 (8th Cir. 2011) ("We have repeatedly affirmed obstruction-of-justice enhancements . . . when the evidence of the defendant's willfulness [as to his false statements] was unequivocal and the record left no doubt that the defendant's false testimony at trial was not the result of

confusion, mistake, or faulty memory. . . . There is no constitutional right to lie.") (internal quotations omitted); *United States v. Whirlwind Soldier*, 499 F.3d 862, 873 (8th Cir. 2007) ("This enhancement [3C1.1] may be supported if the district court finds that the defendant gave false testimony on a material matter with the intent to provide false testimony."). Whether Engelmann told Excel Title about the different prices and the kickbacks was material to Engelmann's good faith defense. Engelmann wilfully and unequivocally testified that he related the price and kickback information to Excel Title. This testimony was belied by the testimony of the Excel Title witnesses, Cathy Cockel, and the documents sent from Engelmann's office to Excel Title. Engelmann also repeatedly denied the material admissions he made to agents Huber and McMillan. The obstruction of justice enhancement should be applied.

### V.    Loss and Restitution are Reasonably Estimated in the PSR.

Engelmann argues that the foreclosure sale prices of the Laures properties do not reflect the properties' fair market value and that loss is therefore indeterminable. Def. Sent. Mem. 11, ECF No. 67. This argument fails.

Under U.S.S.G. § 2B1.1, "loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A). Defendant concedes that the lenders sustained an actual loss. Def. Sent. Mem. 11, ECF No. 67. In cases involving collateral pledged, loss is reduced by "the amount the victim has recovered at the time of sentencing from disposition of the collateral." U.S.S.G. § 2B1.1 cmt. n.3(E)(ii). In mortgage fraud cases in particular, the loss estimate is obtained by calculating the difference between the unpaid principal balance of the mortgages and the subsequent sales prices of the properties. *United States v. McKanry*, 628 F.3d 1010, 1019 (8th Cir. 2011) (approving and adopting the loan-balance-minus-sales-price method for calculating

9

loss in a mortgage fraud case); *United States v. Parish*, 565 F.3d 528, 535 (8th Cir. 2009) ("the equation to calculate actual loss to the lenders is the amount of the fraudulently obtained mortgage loans minus any payments made . . . and the value of the collateral at the time of sentencing."). This is the method used in the PSR. The loss estimates are reasonable.

WHEREFORE, the government respectfully requests that the Court apply the enhancements for sophisticated means, abuse of a position of trust, and obstruction of justice and not apply a reduction for mitigating role. The government also respectfully requests that the Court sentence Engelmann based on the loss estimates in the PSR.

        Respectfully submitted,

        Nicholas A. Klinefeldt
        United States Attorney

By:   /s/ John D. Keller
        John D. Keller
        Assistant United States Attorney
        United States Courthouse, Suite 310
        131 East Fourth Street
        Davenport, Iowa 52801
        (563) 449-5426
        (563) 449-5433 fax
        John.Keller@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that I
electronically filed the foregoing with the Clerk
of Court using the ECF system which
will send notification of such filing to defense counsel.

UNITED STATES ATTORNEY

By:  /s/ John D. Keller
     John D. Keller