IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal No. 3:11-cr-00047-JEG |
| ) | |
| Plaintiff, ) | |
| vs. ) | BRIEF OF THE DEFENDANT IN |
| ) | SUPPORT OF HIS MOTION FOR |
| MARC ROBERT ENGELMANN, ) | RELEASE PENDING APPEAL |
| ) | |
| Defendant. ) | |

The defendant Marc Robert Engelmann has moved for release pending appeal. The pertinent procedural facts are set forth in the referenced motion. In this brief, Engelmann will show that his motion should be granted under the applicable statute.

Engelmann Should Be Released Pending Appeal Because (A) He Is Not A Flight Risk Or A Danger To Others And (B) He Presents A Substantial Question Of Law That Is Likely To Result In Reversal Of His Conviction And In A New Trial.

Title 18 U.S.C. §3143(b) governs Engelmann's motion for release during the pendency of his appeal from his conviction and sentence. The statute requires Engelmann to show "(A) by clear and convincing evidence that [he] is unlikely to flee or pose a danger to others, and (B) that his appeal 'raises a substantial question of law or fact' that is likely to result in reversal, new trial, or reduction to a sentence that would be served before disposition of the appeal." *United States v. Marshall,* 78 F.3d 365, 366 (8th Cir.1996). Engelmann satisfies each prong.

A. Engelmann Is Not A Flight Risk Or A Danger To Others.

Engelmann is 60 years old and (except during post-secondary studies and first year of legal employment) has lived in the Davenport area his entire life. His elderly mother (who is 85 years old and is afflicted with early dementia) and his four siblings all reside in the Davenport area. Engelmann's ex-wife also lives in the area, as does two of his three adult children (and

1

several of his grandchildren); his other adult child resides in the Chicago area. Engelmann is close to his family.

Engelmann further has his professional and financial ties with the Davenport community. The greatest value of his assets (as shown in the PSR) is in two parcels of real estate in Scott County—the predominate part of his assets are illiquid and now subject to the restitution lien set forth in 18 U.S.C. § 3613(c) ("Lien—A fine imposed . . . or an order of restitution made pursuant to sections 2248, 2259, 2264, 2327, 3663, 3663A or 3664 of this title, is a lien in favor the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986. The lien arises on the entry of judgment and continues for 20 years. . . ."). Engelmann would have great difficulty in converting his illiquid assets to cash even if he wanted to do so in order to flee the jurisdiction. He has practiced during the last 34 years of his professional career (in law) out of Davenport. In addition to his family, his professional colleagues and friends reside in the Davenport area.

Engelmann has been compliant with all the obligations imposed on him through his release bond and the restrictions associated with his release. He has appeared at every proceeding in this action that required his personal appearance. Since the guilty verdicts were handed down on September 13, 2011, Engelmann has remained in the Davenport area and resided at the same place as before the trial. This has remained the case since Engelmann was sentenced on January 26, 2012. Engelmann is not a flight risk—he will not be going anywhere should his motion for release pending appeal be granted.

Nor is Engelmann dangerous to himself, to others or to the community. The offenses for which Engelmann was convicted are non-violent crimes. Prior to his present convictions,

Engelmann had no criminal record. He has no history of being a threat or danger to anyone. That has not changed in the five months since the jury returned its guilty verdicts in this case. Other than the present case, Engelmann has never been in criminal difficulty. Engelmann is not a danger. He does not pose a risk to reoffend while he waits for the results of his pending appeal.

B. Engelmann's Appeal Raises At Least One Substantial Question Of Law That Is Likely To Result In Reversal Of His Convictions And The Remedy Of A New Trial.

Engelmann has perfected his appeal. One of the issues he will raise before the circuit is whether the district court erred (committed an error of law) in failing to give an adequate good faith defense instruction to the jury. Good faith is a complete legal defense in this case, because each of the nine counts returned against Engelmann requires the government to establish beyond a reasonable doubt that Engelmann acted with fraudulent intent. *United States v. Derosier,* 501 F.3d 888, 892 (8th Cir.2007) (good faith is a complete defense to charges that require the government to prove the defendant acted with fraudulent intent). If Engelmann succeeds on this appeal issue, then all of his convictions will be reversed and he will be entitled to a new trial—so this is the precise type of appeal issue that qualifies a defendant like Engelmann for release pending appeal under the post-sentencing release statute.

Section 3143(b)(B) requires Engelmann to show that his appeal "is not for the purpose of delay and raises a substantial question of law or fact likely to result in—(i) reversal, [or] (ii) an order for a new trial". The en banc eighth circuit described what a "substantial question" means under the statute in the following manner:

> To sum up: We hold that a defendant who wishes to be released on bail after the imposition of a sentence including a term of imprisonment must first show that the question presented is substantial, in the sense that it is a close question or one that could go either way. It is not sufficient to show simply that reasonable judges could differ (presumably every judge who writes a dissenting opinion is still "reasonable") or that the issue is fairly

3

> debatable or not frivolous. On the other hand, the defendant does not have to show that it is likely to probable that he or she will prevail on the issue on appeal.

*United States v. Powell,* 761 F.2d 1227, 1233-34 (8th Cir.1985) (en banc). Once the defendant makes this showing, then he must demonstrate that the close question "is so integral to the merits of the conviction that it is more probable than not that reversal or new trial will occur if the question is decided in the defendant's favor." *Id.* at 1234. At this stage, the district court must "assume that the substantial question will go the other way on appeal [i.e., will be decided in the defendant's favor] and then assess the impact of such assumed error on the conviction." *Id.*

Engelmann raises a substantial question of law. Whether the court correctly instructed the jury on the good faith defense is minimally a close question—one that legitimately could go either way at the very least. This is because Engelmann timely requested and submitted a proposed good faith instruction with its second paragraph taken verbatim from the circuit's uniform good faith instruction (number 9.08) and as originally written by the circuit in *United States v. Ammons,* 464 F.2d 414, 417 (8th Cir.), *cert. denied,* 409 U.S. 988 (1972). (The first paragraph of Engelmann's proposed good faith instruction correctly told the jurors that good faith was a complete defense to all nine counts—and the district court did inform the jurors of that legal proposition in the good faith instruction that it actually submitted.) The circuit in subsequent cases has confirmed that the stock instruction on good faith is a proper and adequate statement of the law when fraudulent intent comprises an element of the criminal offense(s) at issue. *United States v. Goings,* 313 F.3d 423, 427 (8th Cir.2002) (per curiam) ("The district court properly gave the Eighth Circuit stock instruction on good faith instead of the defendants' longer proposed instruction. *See United States v. Cheatham,* 899 F.2d 747, 751-52 (8th Cir.1990) (approving stock instruction).").

A "party is entitled to an instruction reflecting that party's theory of the case if the instruction is legally correct and there is evidence to support it." *Federal Enters. v. Greyhound Leasing & Fin. Corp.,* 786 F.2d 817, 820 (8th Cir.1986). The circuit has expressly "held that defendants are entitled to an instruction on good faith [where the offense has a fraudulent intent element] where one has been requested and evidence exists to support the theory." *United States v. Casperson,* 773 F.2d 216, 223 (8th Cir.1985) (citing *United States v. Sherer,* 653 F.2d 334, 337 (8th Cir.), *cert. denied,* 454 U.S. 1034 (1981)).

In *Casperson,* the circuit reversed the defendants' convictions on offenses that had fraudulent intent elements and where the district court did not separately instruct on the good faith defense. The government on appeal argued that the instructions as a whole—and particularly those defining fraud and fraudulent intent—adequately conveyed the concept of good faith to the jury because those instructions told the jurors that the defendants had to act "willful[ly]" and with "specific intent" to possess the requisite intent to defraud (a necessary element of the charges of conspiracy, wire fraud and mail fraud). The circuit disagreed—it concluded "we cannot agree that the instructions directed the jury's attention to the defense of good faith with sufficient specificity to avoid error." *Id.* at 223. That is, the *Casperson* court held that, in a case involving offenses with the element of fraudulent intent, a separate good faith defense instruction must be given when requested by the defendant (and when otherwise supported by the evidence); further, that stand-alone instruction must be sufficiently specific in order to avoid reversible error (that is, the good faith defense instruction cannot be bootstrapped onto the separate fraudulent intent offense element instructions in order to advise the jury what the good faith defense theory entails).

5

The *Casperson* court cited to an en banc tenth circuit opinion, *United States v. Hopkins,* 744 F.2d 716 (10th Cir.1984) (en banc), as support for its ruling. In *Hopkins,* the full tenth circuit considered two panel decisions that were consolidated for en banc consideration—the first, *United States v. Hopkins,* 716 F.2d 739 (10th Cir. 1982) (withdrawn on en banc ruling), involved "whether adequate instructions had been given on the defense of good faith", *Hopkins,* 744 F.2d at 717; whereas the second, *United States v. Peterman,* 82-100, in which the "defendant requested an instruction on the point [of good faith] and it was refused", was consolidated with the *Hopkins* en banc review and before the panel decision had issued. *Id.* The *Hopkins* panel had ruled that the instructions when considered as a whole had adequately conveyed to the jury the defendant's good faith defense—for those instructions, dealing with the fraudulent intent and knowledge elements, told the jury the following: that "[t]o act with intent to defraud means to act knowingly and with specific intent to deceive"; that "[a]n act is knowingly done if done voluntarily and intentionally and not because of mistake or accident or other innocent reason"; and that "[t]he purpose of adding the word knowingly was to insure that no one would be convicted due to mistake or accident or other innocent reason." *Hopkins,* 719 F.2d at 750-51. The full tenth circuit rejected the panel's reasoning (that the fraudulent intent instructions quoted above adequately conveyed to the jury the gist of the good faith defense) despite the clarity of those instructions in requiring the jury to find the defendant acted with knowledge, voluntarily, intentionally and with specific intent as opposed to acting under mistake, accident or other innocent reason. That is, the adequacy of a good faith defense instruction must stand alone and an inadequate (or nonexistent) good faith defense instruction cannot be bootstrapped to the separate (and offense element instructions of) fraudulent intent and knowledge. The *Hopkins* en banc court ruled in 744 F.2d at 718 (italics in original; underline added):

> The "good faith" instruction is required to be given as a separate subject. Thus instructions on willfulness, on aspects of intent, on untruth of representations or fraudulent statements are *not* sufficient for this purpose. <u>There must be a full and clear submission of the good faith defense as such</u>. [Citations omitted.]
>
> Our holding as to the need for a good faith instruction in the above cases is intended to apply to both substantive and conspiracy counts for mail and wire fraud.

It is easy to understand why the *Hopkins* court drew this distinction. The government must prove the particular elements of a criminal offense (here, fraudulent intent and knowledge) by clear and convincing evidence. If the government fails in its proof, the defendant will be found not guilty of the offense. The jury in this circumstance will not need to reach any defense theory (such as good faith) the defendant may have raised—the jury has already determined that there has been a failure of proof of the elements of the offense. However, should the jury otherwise find the government has met is burden to prove all the elements of the offense, then the jury would need to consider what defense theories are raised and whether the evidence is sufficient to prove any such theory. But if the legal standards of the defense theory are themselves contained in the offense element instructions, then the defense theory itself is masked from the jurors. Good faith negates fraudulent intent; it is not the strict absence (of proof) of such intent. Granted, jury instructions are to be read as a whole—but a trial court's failure to submit a full, clear and independent instruction on the good faith theory of defense in essence does away with that defense theory—it simply reduces the matter to whether or not the government proves the fraudulent intent and knowledge elements without the jury's adequate consideration if a defendant's good faith has otherwise negated those elements.

The district court in the present case (the *Engelmann* case) barely went one-up from the complete absence of stand-alone good faith defense theory instructions that resulted in vacation

of the defendants' respective convictions in *Casperson* and *Hopkins*. Here, the district court did give a separate instruction to the jury entitled "Good Faith: Theory of Defense" (instruction no. 25) but the court did not then provide *any* substantive explanation at all to guide the jurors in fully considering this defense theory. Other than telling the jury that good faith was a complete defense to all the charged offenses, the entire substance of the instruction was the following terse sentence: "Evidence that the Defendant acted in good faith may be considered by you, together with all the other evidence, in determining whether or not he acted with intent to defraud." (Id.) This single sentence not only is unenlightening in itself (it tells us nothing about what "good faith" means), it further incorporates the same error that mandated reversal of the defendants' fraud based convictions in *Casperson* and *Hopkins*—defaulting to the fraudulent intent and knowledge element instructions for the jury to itself read the tea leaves as to what good faith must (or even might) mean in the context of a conspiracy, bank fraud and wire fraud case. That is not providing the jurors with the required "full and clear submission of the good faith defense as such." *Hopkins,* 744 F.2d at 718.

   The situation does not improve even if we just allow for the assumption that a meager good faith instruction can be "cured" by reference to the fraudulent intent and deliberate ignorance offense element instructions provided by the court in this case. The district court's instruction on fraudulent intent provides: "To act with 'intent to defraud' means to act knowingly and with the intent to deceive someone for the purpose of causing some financial loss or loss of property or property rights to another or bringing about some financial gain to oneself or another to the detriment of a third party." (Instruction no. 19.) The district court's instruction on knowledge via "deliberate indifference" provides that Engelmann had knowledge of the shenanigans (the bank fraud) if he "was aware" of "a high probability" that the lenders did not

know of the actual sale prices of the sold properties or he otherwise "deliberately avoided learning the truth" of the lenders' awareness. (Instruction no. 22.) That is, the knowledge instruction was not based on actual knowledge but rather on a watered-down form called "high awareness" or "deliberate indifference." The knowledge instruction concluded with the jurors being told that negligence, carelessness or mistake was insufficient to satisfy this diluted knowledge standard. (Id.) These offense element instructions contained nothing more (and considerably less) than the intentionality instructions the eighth circuit found insufficient in *Casperson* and the tenth circuit found lacking in *Hopkins* to have accorded the jury adequate information as to what "good faith" means in the context of a criminal fraud based case. The jurors themselves recognized this when (two of them) specifically asked the court to define what it meant by "good faith." (Jury question—"Could you please further define 'good faith?'").

Engelmann did not propose a long and verbose good faith instruction of the sort that was properly rejected in *Goings* and *United States v. Nance,* 502 F.2d 615, 619 (8th Cir.1974), *cert. denied,* 420 U.S. 926 (1975) ("Here there was submitted a long, verbose instruction essentially setting forth a defense of good faith, yet containing also a detailed description of the purported evidence and inferences drawn therefrom by defense counsel."). Pointedly, the circuit in *Goings* ruled the "district court properly gave the Eighth Circuit stock instruction on good faith instead of the defendants' longer proposed instruction." *Goings*, 313 F.3d at 427. The circuit since its *Ammons* decision (that set forth the language that became the good faith stock instruction) has recognized the district courts can enlarge the stock good faith instruction to incorporate more case-specific good faith factors. *Ammons,* 464 F.2d at 417 ("this instruction [which became the stock instruction] could have been enlarged to incorporate the specific factors upon which the appellant relied to show he acted in good faith"). Engelmann appropriately asked for the stock

good faith instruction, one that would have told the jurors the following (that were not incorporated into any of the other offense element instructions submitted by the court): that fraudulent intent is not presumed or assumed; that such intent is personal and not imputed; that one is chargeable with his own personal intent and not the intent of another; that one who acts with honest intention is not chargeable with fraudulent intent; and that bad faith is an essential element of fraudulent intent. (Engelmann's requested good faith instruction; also circuit stock instruction no. 9.08.) A central part of Engelmann's defense to the fraud based charges was that he acted in good faith because the documents he prepared (seller's closing statements) expressly noted the two sales prices (with the reduced or actual price in bold type) and he acted with good intention and the honestly held belief that the lenders were informed of the differences in pricing. Engelmann was essentially stripped of his good faith defense when the district court failed to give the jury a "full and clear submission of that defense as such." *Hopkins,* 744 F.2d at 718. Indeed, the district court's good faith defense theory instruction lacked any substantive content. It did nothing more than tell the jury that good faith—whatever that term might mean—was a complete defense to the criminal charges. It told them nothing else. The jury was left without necessary guidance of the legal standard of good faith in order for them to determine the strength of Engelmann's central defense. This was a significant and outcome changing error. *Derosier,* 501 F.3d at 893 ("This Circuit has held that defendants are entitled to a theory of defense instruction at trial if a timely request is made, the evidence supports the proffered instruction and the instruction correctly states the law.") (citation and internal quotation marks omitted).

At the minimum, Engelmann presents a "close question" under § 3143(b)(B) as to whether he will prevail on this issue on appeal—and recall: all that he needs to show for purposes of his present motion for release is that this question "could go either way," not that it

is "likely or probable" he will prevail. *Powell,* 761 F.2d at 1233-34. Engelmann has more than made that showing.

The final requirement under the cited release subsection is that Engelmann shows his convictions will be reversed and/or he will obtain a new trial if he prevails on the question raised. This is not even a close question. Should the circuit agree with Engelmann—that the good faith instruction was erroneous—then he will obtain reversal of his convictions and be awarded a new trial. This is because the good faith defense applies to all nine counts for which Engelmann was convicted. *Derosier,* 501 F.3d at 892 (good faith is a complete defense to charges that require the government to prove the defendant acted with fraudulent intent).

*  *  *

For the reasons stated and authorities cited by Engelmann in his motion for release and this supporting brief, the court should grant the motion and order Engelmann released under his existing bond terms pending completion of appeal proceedings.

/s/ S.P. DeVolder

S.P. DeVolder         AT0001876
THE DeVOLDER LAW FIRM
1228 Sunset Drive, Suite C
Norwalk, IA 50211-2401
Tel: (515)981-5150
Fax: (515)981-5156
steven.devolder@devolderlawfirm.com
ATTORNEY FOR THE DEFENDANT

CERTIFICATE OF SERVICE

       The undersigned declares that on February 15, 2012 the foregoing document was filed with the clerk of court using the ECF system and that service of this document on the following counsel of record listed below was perfected on that same date through that electronic filing system:

Donald Allegro, Esq.
John Keller, Esq.
Assistant United States Attorneys
Office of the United States Attorney
131 East 4th Street, Suite 310
Davenport, IA 52801

                                              /s/  S.P. DeVolder

                                              S.P. DeVolder