IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 3:11-cr-00047-JEG |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | REPLY OF THE DEFENDANT IN |
| | ) | SUPPORT OF HIS MOTION FOR |
| MARC ROBERT ENGELMANN, | ) | RELEASE PENDING APPEAL |
| | ) | |
| Defendant. | ) | |

The government resists Engelmann's motion for release on a single basis: Engelmann fails to make the required showing under 18 U.S.C. § 3143(b) that he raises a "close question"—one that could go either way on appeal—as to whether the district court adequately and correctly instructed the jurors on Engelmann's good faith theory of defense.  The government agrees that Engelmann satisfies the other two requirements of the release statute—(a) that the clear and convincing evidence shows he is not a flight or danger risk; and (b) that, should he prevail on his challenge to the adequacy of the good faith instruction(s), his convictions will be reversed and he will be entitled to a new trial.  So the only salient issue is the "closeness" of the question on the adequacy of the instruction(s) on good faith.

A preliminary observation is in order.  The government in its resistance nowhere argues that the good faith instruction the district court did read to the jury is adequate *standing alone*. And realistically the government could not successfully justify such an assertion—for the good faith instruction provided the jury with no substantive guidance as to what good faith means; the instruction only substantively told the jury that good faith was a complete defense to all nine charges.  This leads to the first important point as to why the government's resistance is insufficient to successfully counter Engelmann's position that he indeed raises (at the minimum)

1

a close question on the adequacy of the good faith instruction(s).  The government first takes issue with Engelmann's assertion that the separate good faith defense instruction must on its own adequately convey to the jury the substance of the good faith defense.  The government relies on *Untied States v. Brown,* 478 F.3d 926 (8th Cir.2007) and the unpublished tenth circuit en banc opinion *United States v. Bowling,* No. 08-6184, 2009 WL 6854970 (10 Cir. 2009) (en banc) (which the government acknowledges at page 7 of its brief is "unpublished and of no precedential weight").  But these cases are not directly applicable to Engelmann's first argument.

It is true that our circuit in *Brown* ruled the defense theory of good faith was adequately conveyed to the jury without the district court's having given the jury a separate good faith instruction.  *Brown,* 926 F.3d at 928.  The *Brown* court found the circuit's earlier opinion in *United States v. Casperson*, 773. F.2d 216 (8th Cir.1985) "distinguishable [because] we find in this case [and unlike in *Casperson*], the instructions given adequately covered the same ground that any good-faith instruction would have covered."  *Id.*  As discussed by Engelmann in his first brief, the *Casperson* court itself cited, among other cases, the tenth circuit's published (and hence, then precedential) opinion of *United States v. Hopkins,* 716 F.2d 739 (10th Cir.1982), as support for the eighth circuit's recognition in *Casperson* that the good faith instruction(s) must fully and adequately explain to the jury the concept of good faith.  (The government correctly observes since *Bowling* the tenth circuit now no longer requires an independent good faith instruction in fraudulent intent based cases *so long as* good faith otherwise is adequately explained in other instructions—but note: *Bowling* (nor, for that matter, any other case cited by the government including *Brown*) stands for the proposition that a good faith instruction when given may permissibly fail to contain any substantive description of good faith in and of itself— and such a rule would be counterintuitive; why go through the trouble of giving a "bad" or

wholly empty good faith instruction in the first place?—that would only likely lead to juror confusion (of the very sort that occurred in the case at bar).)

The government glosses over the essential fact that the district court in the case at bar *did* purport to give a separate jury instruction on good faith—and that instruction told the jury "[e]vidence that the Defendant acted in good faith may be considered by you, together with all the other evidence, in determining whether or not he acted with intent to defraud." (Instruction no. 25.) The instruction provided the jurors with no substantive explanation of what "good faith" entails—a matter the jurors themselves recognized when they asked the court to actually define or otherwise give them more specific guidance as to the contours of the good faith defense. (Jury question.) The jurors told the district court that there was confusion as to what good faith meant and in light of the fact that the specific good faith instruction itself did not provide an explanation.

There is no statement in *Brown* (let alone in *Casperson* and *Bowling*) that a good faith instruction when specifically given need not contain *any* substantive explanation of the concept at all. An instruction—and particularly one as important as a good faith theory of defense in a fraudulent intent based criminal case—cannot be given in such a matter as to confuse the jurors and leave them guessing. A defendant like Engelmann is entitled to an adequate good faith instruction in a case such as this—and the government in its resistance does not otherwise argue that the evidence was insufficient to begin with such that the giving of a good faith instruction (or adequate instructions informing the jury of that concept) was not itself warranted. *Casperson* (as well as *Hopkins*) still stand as good law for the proposition that the good faith instruction(s) must convey "a full and clear" submission of the good faith defense to the jury as such. *Brown* did not change that law—the circuit panel there specifically said that where the district court

does not give a stand-alone (and adequate) good faith instruction then reversible error occurs unless "the [other] instructions given adequately covered the same ground that any good-faith instruction would have covered." *Brown,* 926 F.3d at 928. That is, those instructions must fully describe the good faith theory of defense in a like manner as if the independent and fully adequate good faith instruction had been given.

The circuit panel's decision in *United States v. Ammons,* 464 F.2d 414 (8th Cir.), *cert. denied,* 409 U.S. 988 (1972), the language of which became the circuit's stock good faith instruction (no. 9.08), defines the defense theory of good faith in a fraudulent intent case. It says fraudulent intent is not presumed or assumed; that such intent is personal and not imputed; that one is chargeable with his own personal intent and not the intent of another; that one who acts with honest intention is not chargeable with fraudulent intent; and that bad faith is an essential element of fraudulent intent. *Ibid.* Engelmann's proposed instruction (the stock instruction) would have told the jury exactly this—and as such, it would have provided the jury with an adequate explanation of good faith. *United States v. Goings,* 313 F.3d 423, 427 (8th Cir.2002) (per curiam) ("The district court properly gave the Eighth Circuit stock instruction on good faith instead of the defendants' longer proposed instruction."). As *Ammons* and *Goings* make clear, the issue is not whether the good faith instruction when given must adequately convey to the jury the substance of this key defense theory in a fraudulent intent case (it must); the issue is whether in a particular case the *Ammons* instruction (now the good faith stock instruction) should be "enlarged to incorporate the specific factors upon which the [defendant] relied to show he acted in good faith". *Ammons,* 464 F.2d at 417. The government in its resistance does not claim that Engelmann's proposed instruction (the good faith stock instruction) incorrectly stated the law or

otherwise should have been rejected as too verbose and argumentative.  It was a properly proposed instruction that was justified by the evidence and correctly stated the law.

The precise issue is not whether the instructions as a whole (and specifically, the fraudulent intent and knowledge element instructions) adequately conveyed to the jury the concept of good faith (in any case, they did not); rather, it is whether those instructions were sufficiently specific to adequately define to the jurors what "good faith" listed in the specific good faith instruction (no. 25) actually meant.  The real question is whether the fraudulent intent and knowledge (in the form of "deliberate ignorance") element instructions somehow "cured" the inadequate specific instruction on the good faith theory of defense.  The answer is no.

First, the jurors themselves told us this when they asked their only substantive question— "Could you please further define 'good faith'?"  (The other question the jurors submitted involved purely procedural matters—what is the protocol after the verdict is read; do they "get a note [to excuse employment absenteeism] for [their] employers"; do they get to leave after the verdict is read "before everyone else in the courtroom"; and how long do they "deliberate before [they] go home for the day".)  The jurors' single substantive question showed they were justifiably confused as the result of the inadequate stand-alone good faith instruction.

Second, the fraudulent intent and knowledge element instructions (that the government relies upon to "save" (or "cure") the inadequate good faith instruction) fail in their own right to fill-in for a sufficient good faith instruction.  As Engelmann already noted in his supporting brief, the fraudulent intent element instruction is comprised of just one sentence: "To act with 'intent to defraud' means to act knowingly and with the intent to deceive someone for the purpose of causing some financial loss or loss of property rights to another or bringing about some financial gain to oneself or another to the detriment of a third party."  (Instruction no. 19.  (The final

sentence of that instruction respects false statements, and the knowing or reckless indifference standard applicable to such statements.).)  The fraudulent intent instruction did not tell the jury anything specific about "good faith" (that term does not appear in the instruction), other than to say Engelmann had to act with "knowledge" and "intent".  "Intent" was not further defined in any other instruction (let alone in the good faith instruction itself where it would have been given definitional content had Engelmann's proposed stock instruction been given).  "Knowledge" was described in a separate elements instruction entitled "deliberate ignorance" (instruction no. 22).  "Knowledge" was not defined as actual knowledge; it rather was described as "awareness" on Engelmann's part "of a high probability the lenders were not informed of the actual sales prices of the property and/or the cash back exchanged between seller and the buyer and that the defendant deliberately avoided learning the truth as to whether the lenders knew."  (Id.)  The jurors were only told Engelmann did not possess this watered-down version of knowledge if he "was merely negligent, careless or mistaken as to whether the lenders were informed of the actual sale price of the properties and the cash back exchanged between the seller and the buyer." (Id.)

These element instructions did not adequately convey the substance of the good faith theory of defense.  In *Brown* (the government's principal cited case) the circuit panel quoted *United States v. Sherer*, 653 F.2d 334, 338 (8th Cir.1981) for this essential good faith proposition: "The essence of a good-faith defense is that one who acts with honest intentions cannot be convicted of a crime requiring fraudulent intent."  *Brown,* 478 F.3d at 928.    The *Brown* court found the jury instructions adequately conveyed that concept because "the jury was instructed on more than one occasion that the defendants had to have acted 'knowingly, voluntarily, and intentionally' in order to be found guilty of both the conspiracy and wire fraud counts."  *Id.*  In

contrast, the jury instructions in *Casperson* were insufficient to independently convey to the jury the essential substance of the good faith defense theory. The instructions did inform the jury the defendants had to act with "specific intent" to defraud as well as willfully ("willful"). But these instructions were without "sufficient specificity" to "direct[] the jury's attention to the defense of good faith". *Casperson,* 773 F.2d at 223. Nor were the essential components of Engelmann's having to act "knowingly, voluntarily and intentionally" reinforced to the jury through multiple instructions containing those terms as in *Brown*. As the *Brown* court put the matter: "In it [*Casperson*], we found the trial court's specific intent instruction was not sufficient to cover the substance of the defendants' good-faith defense, and that the trial court erred in refusing to give the proffered good-faith instruction." *Brown,* 478 F.3d at 928.

This is the precise situation in the case at bar. The jury was not told that Engelmann had to act with "specific intent" as opposed to just "intent" (left undefined by the district court); the jury was told that the level of "knowledge" sufficient to convict Engelmann was "deliberate ignorance" as opposed to "knowingly" (i.e., bad faith); and the jury was not instructed on "voluntariness" in respect to intent to defraud. As in *Casperson*, the instructions did not "direct the jury's attention to the defense of good faith with sufficient specificity to avoid error." *Casperson,* 773 F.2d at 223. The specific good faith instruction given in this case did not itself cover these deficiencies by conveying to the jury the essence of the defense—honest intentions—as it provided the jury with no substantive information concerning the defense at all (other than noting good faith—whatever that concept entailed—was a complete defense to the charges).

At the minimum, Engelmann has presented a "close question"—one that could go either way—as to the adequacy of the good faith instruction (both standing alone and in conjunction

with other instructions). Engelmann's motion for release pending appeal should be granted. If Engelmann is not granted release, then he will not be able to turn back the clock to recoup the months he will have spent in the penitentiary while waiting for the circuit to decide his appeal and in the event his appeal is ultimately successful. The question presented is minimally close enough under the existing precedents and facts to justify Engelmann's continued release until the appeal proceedings are concluded.

Finally, Engelmann has now received his letter from the Marshals Service directing him to report on March 6th at 2:00 p.m. to FCI Terre Haute to begin his 36 months' period of incarceration. Accordingly, the district court should grant expedited relief given the rapidly approaching incarceration date.

/s/ S.P. DeVolder

---

S.P. DeVolder        AT0001876
THE DeVOLDER LAW FIRM
1228 Sunset Drive, Suite C
Norwalk, IA 50211-2401
Tel: (515)981-5150
Fax: (515)981-5156
steven.devolder@devolderlawfirm.com
ATTORNEY FOR THE DEFENDANT

CERTIFICATE OF SERVICE

The undersigned declares that on February 19, 2012 the foregoing document was filed with the clerk of court using the ECF system and that service of this document on the following counsel of record listed below was perfected on that same date through that electronic filing system:

Donald Allegro, Esq.
John Keller, Esq.
Assistant United States Attorneys
Office of the United States Attorney
131 East 4th Street, Suite 310
Davenport, IA 52801

/s/ S.P. DeVolder

---

S.P. DeVolder